## CHAMBLISS *vs.* SMITH.

[BILL IN EQUITY BY JUDGMENT CREDITOR, TO SUBJECT LAND HELD ON SECRET TRUST FOR DEBTOR.]

1. *Admissibility of answer as evidence against co-defendant.*—The general rule is, that the answer of one defendant is not admissible as evidence against a co-defendant.

2. *Parol contract for sale of lands within statute of frauds.*—Where a person gives his note for the purchase-money for a tract of land which another desires to buy, and agrees by parol with the latter that he may have the land if he can and will pay for it,—such parol contract is within the statute of frauds.

Chambliss v. Smith.

3. *Specific execution of parol contract on ground of partial performance.*—A possession which has been abandoned, under a parol contract for the purchase of land, is not such a partial performance as will authorize a specific execution of the rescinded contract.

4. *Mutuality necessary to valid contract.*— An agreement between the purchaser of a tract of land and another person, who was prevented by want of means from making the purchase, to the effect that the latter may have the land if he can and will pay for it, imposes no obligation on the latter to take the land, and, consequently, does not amount to a contract for want of the requisite mutuality.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. WADE KEYES.

THIS bill was filed by John N. Smith, who was a judgment creditor of James A. Branch, against said Branch and wife, William H. Chambliss, Josiah Blackman, and others; seeking to subject to the satisfaction of complainant's judgment a tract of land, alleged to be held by Blackman, under a contract of purchase from Chambliss, on secret trust for Branch or his wife. The opinion of the court states all the material facts of the case. On final hearing, the chancellor rendered a decree for the complainant, which is now assigned as error.

T. WILLIAMS, for the appellant.

WATTS, JUDGE & JACKSON, *contra.*

WALKER, J.—The central and cardinal point in this case is, the alleged purchase of a tract of land under a secret trust for the complainant's execution debtor, or his wife. There is no proof taken in reference to the existence of such a trust. If such a trust be established at all, it must, therefore, be by the admissions of the answers, either express or implied, according to the rules of chancery pleading and evidence.

The answer of Blackman, upon whom it is attempted to fix the trust, denies, in plain and positive terms, that the purchase was made "under secret or other trust" for Branch, the debtor. This flat denial by a material defendant, directly interested in the question, certainly throws the *onus* of proof upon the complainant, as to the

proposition that the purchase was upon trust for Branch, the debtor; and even the concession that the allegation is admitted in the answers of some other defendants, could not profit the complainant; because it is a general rule, that the answer of one defendant is not evidence against another, and there is nothing in the attitude of Blackman, in reference to the other defendants, that could make any exception to the general rule applicable to him as to this point of evidence.—Halstead v. Shepard, 23 Ala. 558; Julian v. Reynolds, 8 Ala. 684; Taylor v. Roberts, 3 Ala. 83; Singleton v. Gayle, 8 Porter, 270; 2 Dan. Ch. Pl. & Pr. 981; 1 Greenleaf on Ev. §§ 178, 180, 182; 3 *ib.* § 283; Field v. Holland, 6 Cranch, 8.

In the consideration of the other branch of the proposition, that the purchase was made in trust for the debtor's wife, we avoid the question, whether the trust was such as would enure to the husband, and could therefore be made available by his creditor, because its determination is not necessary. The answer of Blackman says, that he has no interest in the suit, except in relation to the land; and adds a statement, which, it says, is the whole truth in relation to the matter. That statement contains a detail of circumstances, showing that the condition of Branch's family appealed to the defendant's charity. It sets forth that it was desired to procure the land in question, as a residence for Branch's family; that Branch lived in Mobile, deriving an income inadequate to the maintenance of his family, from a clerkship, while the family remained in Lowndes county; that it was thought, that if Mrs. Branch could get the place to live on, she could pay for it with the proceeds of her industry and care; that Chambliss would not let her have the land; that the defendant, Blackman, then gave his note for the land, and told Mrs. Branch, if she could and would pay for the land, she might have it; that there was no writing, either in reference to the purchase of the land, or the agreement with Mrs. Branch, except that Blackman gave a note for the purchase-money. The answer proceeds as follows: "There was not any agreement between respondent and Mrs. Branch, only she said she thought she could pay for

the place, and respondent said, if she could and would, she might have it." * * * * "Respondent says, he never made any agreement with Branch, or any one for him, in relation to said lands." The answer asserts that all the agreements in reference to the land rest in parol, and pleads the statute of frauds.

Now, if it be conceded that the agreement, by the answer admitted to have been made between Mrs. Branch and Blackman, amounts to a contract that the latter would hold the land in trust for the former; or, if it be conceded that the omission of the answer to deny that an agreement was made with some other person than Mrs. Branch or her husband that she should have the land, authorizes the implication that there was such an agreement; yet it is certain, that the contract, upon either alternative, rested in parol. The bill, and responsive allegations of the answer, show such to be the case. The statute of frauds has "no application to a trust arising by operation of law alone"; (Caple v. McCollum, 27 Ala. 461;) but, if there be any trust in this case, it arises from a pure, simple, parol agreement, and comes clearly within the statute of frauds.—Agee v. Steel, 8 Ala. 948. There has been no part performance of the parol agreement, on the part of Mrs. Branch, or any one for her. She has paid nothing for the land. The payment, which has been made, and the improvements done upon the land, were under a contract of sale, which the answer states, in response to the bill, was made by Blackman to one Turner. These acts are, therefore, in part performance of a different contract, and can have no effect in taking this one out of the statute of frauds. Admitting, then, that there was a parol agreement to hold the land in trust for Mrs. Branch, it is an agreement which could not be enforced in favor of Mrs. Branch, or her husband, or her husband's creditor, in the absence of fraud, of which there is no evidence in this case.

If it be conceded that what the answer of Blackman admits was said between Mrs. Branch and Blackman amounted to a contract, which would be specifically performed; and that Mrs. Branch went into and held posses-

sion under that contract; and that possession is sufficient part performance to take a parol contract out of the statute of frauds, it would not avail the complainant, because the bill does not aver any possession under the contract, and the answer explicitly states, in response to the bill, that the possession of Mrs. Branch had been abandoned, and that she had abandoned all hope of obtaining the land, and ceased to claim it, either by the contract or charity of Blackman. Even if there was a contract, and a possession under it, it cannot be that an abandoned possession would authorize the specific performance of a rescinded contract.

We do not wish to be understood as admitting, by what we have said, that what is stated in the answer of Blackman amounts to a contract, such as could be specifically performed. On the contrary, we understand it to be totally wanting in mutuality of obligation. It was not binding upon Mrs. Branch, and could not be upon Blackman. It was a mere gratuitous promise, on the part of Blackman, that Mrs. Branch might have the land, if she could and would pay for it.

It results from what we have said, that the chancellor erred in rendering a decree for the complainant. The decree of the court below is, therefore, reversed; and this court, proceeding to render the decree which the chancellor should have done, doth order, adjudge, and decree, that complainant's bill be here dismissed, and that the complainant pay the costs in this court and the court below.

STONE, J., not sitting.