AMERICAN TRUST CO. v. BERGSTEIN.

1. ESTOPPEL—GENERAL PRINCIPLE APPLICABLE WHERE BOTH PARTIES INNOCENT.

The doctrine of equitable estoppel rests upon the general principle that when one of two innocent persons, each guiltless of any intentional or moral wrong, must suffer a loss, it must be borne by that one of them whose erroneous conduct, either of commission or omission, was the cause of the injury.

2. SAME—PARTY NEGLECTING TO USE OPPORTUNITY TO DISCOVER FACTS MUST SUFFER LOSS.

The doctrine of equitable estoppel is essentially one of "good conscience," and therefore where one with convenient opportunity to ascertain the real facts by the exercise of reasonable diligence neglects to do so, he will not be permitted to defeat another's just rights by urging an equitable estoppel based upon his having acted to his disadvantage in reliance upon the other's innocently mistaken representation regarding those facts, when such representation was not made for the purpose of inducing him to so act.

3. SAME.

The purchaser of the vendee's interest in a land contract on foreclosure sale, who had notice that a certain amount was to be added to the vendor's interest and paid before vendee was entitled to a deed, and who, with opportunity to ascertain whether said amount had been paid, failed to do so, and relied on vendor's statement of the amount due, which, by mistake, failed to take into account the amount to be added, may not set up an equitable estoppel as against the vendor's assignee; the mistake having been innocently made and not for the purpose of inducing the purchase.

Appeal from Wayne; Hart (Ray), J., presiding. Submitted January 9, 1929. (Docket No. 30, Calendar No. 33,525.) Decided March 29, 1929.

Bill by the American Trust Company, assignee of the vendor's interest in a land contract, against Minnie Bergstein and others, to foreclose the contract. From a decree for plaintiff, defendant Bergstein appeals. Affirmed.

*Edmund M. Sloman* (*Everett H. Wells*, of counsel), for appellant.

*Race, Haass & Allen* (*Morley E. Keyes*, of counsel), for appellee.

McDONALD, J. This bill was filed to foreclose a land contract. On June 15, 1917, Louis I. Frank sold certain real estate in the city of Detroit to Samuel Efrusy for a consideration of $26,000, of which $4,273.35 was paid on the execution of the contract, and the balance was to be paid in monthly instalments of $250 each. On January 17, 1918, Frank assigned his vendor's interest to the Detroit Mortgage Corporation, guaranteeing its performance on the part of Efrusy, the vendee. Efrusy was unable to keep up his monthly payments. Frank paid them on various occasions until he had paid a total amount of $850, which was credited on the contract to Efrusy. The parties then got together and entered into an agreement in regard to the payments made by Frank, and this agreement was attached to the original contract as a rider. The rider recited the payment of $850, and provided that it should be added to the consideration stated in the contract, and that when the contract was paid down to a mortgage of $7,000, which was on the property, the Detroit Mortgage Corporation should not give a deed to Efrusy until he had paid the $850. Efrusy assigned his interest to Jacob Rosenbach, who as-

signed to David Bergstein and Lillie Wolf. In a circuit court proceeding this assignment to Bergstein and Wolf was decreed to be an equitable mortgage. On a foreclosure of this mortgage by Bergstein and Wolf, the vendee's interest passed to defendant Minnie Bergstein by purchase at the commissioner's sale. The Detroit Mortgage Corporation still owned the vendor's interest. In purchasing the property at the commissioner's sale, Minnie Bergstein was represented by attorney Sloman. He was familiar with the property and had in his possession a copy of the original contract with rider attached. But no payments were indorsed on his copy, so he went to the Detroit Mortgage Corporation and inquired for the amount of the unpaid balance. In giving him this information, the Detroit Mortgage Corporation did not tell him that the amount of unpaid balance given him did not include the $850, which at that time had not been added to the consideration of the contract. Because of this mistake, he says that in making the bid at the foreclosure sale he did not take into account the fact that his client would be compelled to pay the $850. Out of this mistake has grown the present controversy. Defendant Minnie Bergstein insists that she is entitled to a deed without payment of the $850. The present owner of the vendor's interest refuses to give a deed until that amount is paid. The result is the suit to foreclose. Subsequent to the commissioner's sale, the Detroit Mortgage Corporation assigned its vendor's interest to the Michigan Investment Company, which later assigned to the plaintiff, the American Trust Company. On the hearing the circuit judge found against the defendant, determined the whole amount due, and entered a decree providing for a sale in the event that payment was

not made in a specified time. From this decree the defendant has appealed.

The defendant says that there are two propositions of law involved in her appeal.

"1. That the Detroit Mortgage Corporation, through which the appellee claims title, was estopped from claiming any further moneys from appellant even if it had made a mistake in failing to actually add to the unpaid balance of principal owing on the land contract the $850, as provided in the rider attached thereto."

The claim of equitable estoppel presents a close question on the undisputed facts in this case. Is the plaintiff estopped from claiming the true amount due on the contract because its assignor, the Detroit Mortgage Corporation, mistakenly gave the defendant an erroneous statement of the unpaid balance which she relied on to her prejudice in purchasing the vendee's interest?

It is quite impossible to formulate a definition of the doctrine of equitable estoppel that will afford a test for general application. But there are two equitable principles which seem to be applicable to the facts and circumstances of the case under consideration:

First: "In cases of this kind the doctrine of equitable estoppel rests upon the general principle that when one of two innocent persons, each guiltless of any intentional or moral wrong, must suffer a loss, it must be borne by that one of them whose erroneous conduct, either of commission or omission, was the cause of the injury." *Vineland* v. *Fowler Waste Manfg. Co.*, 86 N. J. Law, 342 (90 Atl. 1054).

Second: "To have the benefit of an estoppel a person must show good faith and diligence to learn

the truth. The doctrine of equitable estoppel is essentially one of 'good conscience.' Where, therefore, one with convenient opportunity to ascertain the real facts by the exercise of reasonable diligence neglects to do so, he will not be permitted to defeat another's just rights by urging an equitable estoppel based upon his having acted to his disadvantage in reliance upon that other's innocently mistaken representation regarding those facts, when such representation was not made for the purpose of inducing him so to act.'' 10 R. C. L. p. 696.

The statement given to the defendant's attorney by the Detroit Mortgage Corporation was a correct statement of the unpaid balance on the original contract. It was erroneous only in that it did not take into account the $850 which was to be paid to Mr. Frank as shown by the attached rider. The rider agreement was made more than two years after the original contract. It was for the accommodation and protection of Mr. Frank, who had advanced $850 on payments for the vendee whose performance he had guaranteed. It involved no obligation on the part of the Detroit Mortgage Corporation except to collect the $850 and pay it to Frank; and to that end the rider provided that Frank's interest should be added to the consideration of the original contract and be collected by the Detroit Mortgage Corporation before it gave the vendee a deed. All of this was known to the defendant when she purchased the vendee's interest at the commissioner's sale. She knew that she had to pay this $850 in addition to the original contract consideration. She acted through an attorney who was familiar with the various transactions concerning this property, and who had a copy of the contract with rider attached in his possession. He knew Mr. Frank, the extent of his interest in the

contract, and the manner in which it was to be paid, yet made no inquiry of him to determine the status of his interest at the time he bid for and bought the property for the defendant. He went to the Detroit Mortgage Corporation on two occasions and stood by while the bookkeeper took a statement from the ledger showing the unpaid balance. The ledger did not carry an account of Mr. Frank's interest, presumably for the reason that nothing had been paid on it, and nothing was to be paid on it until the original contract was paid down to the mortgage. This statement was given to the defendant's attorney. There was nothing in it indicating that the $850 had been added to the consideration, yet he made no inquiry as to whether it had been considered in arriving at the unpaid balance. If he had done so, this controversy would not have arisen. In view of these facts, showing the defendant's knowledge of the several interests concerned, the opportunity she had to ascertain the true amount which she was required to pay for the vendee's interest, and her failure to exercise reasonable diligence in doing so, it would be inequitable to permit her to avoid her obligations under the contract and defeat the just rights of the vendor, who was guilty of nothing more serious than an innocent mistake. Particularly is this true when, as appears here, the vendor was not interested in the commissioner's sale, and the representation made as to the balance due was not made for the purpose of inducing her to act in purchasing the vendee's interest. For these reasons, it is our judgment that the plaintiff is not estopped from recovering the true amount due on the contract.

The second proposition urged by the defendant involves the claim that the Michigan Investment Company, assignor of the plaintiff, did not become

subrogated to the contract rights of the Detroit Mortgage Corporation. This contention is based on an apparent misunderstanding of the facts. It is without sufficient merit to require discussion.

The decree of the circuit court is affirmed, with costs to the plaintiff.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.